IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

Janyce LEWIS, Deborah COOPER, Clarissa FOLLEY, )
Harold FOLLEY, Earletta GLADDEN and Telambria TINSLEY, )
Individually and on behalf of all persons similarly situated and )
Charlottesville Public Housing Area Residents (PHAR) )
)
)
**Plaintiffs,** )
)
v. )
) Case No.: 3:12cv00026
)
CHARLOTTESVILLE REDEVELOPMENT & )
HOUSING AUTHORITY, )
)
CONSTANCE DUNN, in her official capacity )
As the Executive Director of the Charlottesville )
Redevelopment and Housing Authority )
)
**Defendants.** )

## FINAL ORDER APPROVING CLASS SETTLEMENT

This case is presently before the court on the plaintiffs' motion for final approval of a class settlement reached with the Charlottesville Redevelopment and Housing Authority ("CRHA") and Constance Dunn. The court held a hearing on the plaintiffs' motion for preliminary approval on November 4, 2013. After considering the motion, the supporting memorandum and declarations, the terms of the settlement agreement filed on September 30, 2013 (the "Settlement Agreement"), the court granted preliminary approval by Order dated November 6, 2013 (Dkt 83). The court held a hearing on plaintiffs' motion for final approval on January 13, 2013. Having reviewed the prior Order and the supporting memorandum and declarations for final approval, it is hereby

**ORDERED**

as follows:

1. Based on this court's prior order, the class definition of the Settlement Class remains as follows:

   > All current and former Charlottesville public housing residents since June 7, 2007 who were subject to CRHA's 2003 resolution regarding utility allowances.

   The court previously analyzed the proposed Settlement Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and found that the requirements of those rules had been met. The court remains convinced that the Settlement Class satisfies the requirements of both Rule 23(a) and Rule 23(b)(3). Accordingly, final certification of the proposed class is granted.

2. The court further finds that the terms of the Settlement Agreement are (a) fair, reasonable, and adequate in light of the relevant factual, legal, practical, and procedural considerations of the action; and (b) free of collusion to the detriment of the members of the Settlement Class.

3. The terms are fair, reasonable, and adequate because they were the result of arms-length negotiation between the parties conducted over a series of mediations with a Magistrate Judge of this court, return to class members approximately one-third of the dollars charged in alleged violation of law, provide for prospective relief, provide for incentive awards to the class representatives consistent with their participation, and provide for attorneys' fees and costs as allowed by law. Furthermore, no class member opted out of the settlement and the only objection filed raised circumstances unique to that individual not pertinent to the class. Accordingly, the court approves the Settlement Agreement upon finding that the settlement is fair, reasonable, and adequate.

4. Plaintiffs Janyce Lewis, Deborah Cooper, Clarissa Folley, Harold Folley, Earletta Gladden, and Telambria Tinsley remain as Class Representatives for the Settlement Class.

5. The following law firm and attorneys remain as Class Counsel for the Settlement Class:

Brenda Castañeda, VSB #72809
brenda@justice4all.org

Thomas D. Domonoske VSB #35434
tom@justice4all.org

LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, Va. 22903
PHONE 434-977-0553 x 849
FAX 434-977-0558

6. If, for any reason, the Settlement does not become effective, this approval order shall be null and void. Except for requiring the return of the funds described in Paragraph 17 if requested by Defendants, it shall not be used or referred to for any purpose in this action or any other action or proceeding. If an appeal from the entry of this order is filed, the funds described in Paragraph 17 shall remain in escrow in the Legal Aid Justice Center's Client Trust Account until that appeal is resolved.

## Prospective Relief for Tenants

7. If no appeal is filed from entry of this order, the terms of this prospective relief shall take effect.

8. The CRHA electricity allowances will be based on the 2010 2rw recommendations, based upon the 2010 HUD calculator, in Attachment 1 in the Preliminary Approval Order.

9. These allowances will continue for a period of five years.

10. The rate applied to excess electric charges shall be $.074 per kilowatt hour exceeding the allowance. This rate will continue in effect for a period of five years.

11. The tenants of each of the 251 units actually charged for utilities shall receive a credit of $15.00 per month, to be applied for thirty-six (36) months from the date of settlement. Such credits shall be applied at the tenant's discretion.

12. The tenants of each of the 251 units actually charged for utilities shall receive a credit of $5.00 per month for twenty-four (24) months thereafter. Such credits shall be applied at the tenant's discretion.

13. This credit shall be on the account of the household assigned to each of the 251 units actually charged for utilities, to be used for any purpose associated with the lease.

14. The CRHA shall implement an individual relief policy for tenants who are elderly, disabled, ill, or otherwise have special needs for usage of electricity beyond their control. The notice and policy was attached to the settlement agreement as Exhibit A (Dkt. 78-1). CRHA's adoption of the proposed Notice and Policy was pursuant to the Settlement Agreement, and therefore Plaintiffs subject to this Class Action waive any notice and comment required under Federal and/or State law in the interest of compromise and that CRHA's adoption of such Notice and Policy shall be deemed to be lawful and valid for the term required under this Settlement Agreement. Plaintiffs shall file no claim challenging the validity of the Notice and Policy during the five year term required under this Settlement Agreement.

15. The CRHA shall further notify tenants of the right to request relief from the imposition of utility surcharges upon implementation of the policy, upon their admission into the public housing program, at their initial lease execution, and at their annual recertification

appointments. This notification shall be in writing and will state the right to challenge the denial of any request for relief in accordance with the CRHA's grievance procedure.

16. This prospective relief is fair, reasonable, and adequate because it implements the requirements of federal law and the intent of promoting energy-efficient practices.

### Retroactive Relief for Former and Current Tenants

17. The Settlement Agreement required defendants to deposit on September 1, 2013, or as soon thereafter as the necessary approvals and appropriations have been obtained, which approvals and appropriations were to be sought with due diligence, $160,000.00 into Legal Aid Justice Center's Client Trust Account at BB&T. As of the date of this order, $160,000.00 has been deposited into this account. These funds are to be distributed as described below.

    a. $95,400.00 to be distributed to tenants who paid excess electricity consumption surcharges incurred between June 7, 2007 and May 31, 2013;

    b. $6,600.00 to be distributed to tenants who did not incur excess electric charges for one or more years between January 1, 2008 and December 31, 2012, and were eligible to receive the $50.00 savings bond;

    c. $6,000.00 for incentive awards of $1,000.00 to each of the class representatives for pursuing the claims, to cover the expenses incurred for attending meetings and hearings as well as personal time spent advancing the litigation, and the personal risk they took in speaking out for their rights;

    d. $50,000.00 for attorney's fees; and

    e. $2,000.00 for the costs and administration of the settlement.

18. The CRHA has identified 427 current and former CRHA tenants who paid excess electric utility consumption charges incurred between June 7, 2007 and May 31, 2013.

19. The total amount of excess utility consumption surcharges eligible for reimbursement is $288,717.24. *See* (Preliminary Approval Order, Attachment 2, Dkt 83.)

20. Current and former CRHA tenants eligible for reimbursement payments are identified by numbers in Attachment 2 along with the amounts they are entitled to receive.

21. The current and former tenants for whom Class Counsel has valid addresses will receive an amount equivalent to at least 33.043 percent of the excess utility consumption fees charged to them between June 7, 2007 and May 31, 2013 and paid by them.

22. The settlement regarding the excess fee charge is fair to all class members who were charged these fees because they each receive the same proportionate share. It is reasonable and adequate because they receive approximately one-third of the charges that were allegedly improperly charged, and it avoids the risk that a determination on the merits could result in actual damages of far less than the amount charged.

23. Current and former tenants for whom Class Counsel has valid addresses and who stayed below their total annual electric utility allowance between January 1, 2008 and December 31, 2012 and thus were eligible for a $50 savings bond pursuant to the 2003 CRHA Board Resolution will receive $50.00 for each year they were eligible. The households eligible for the $50 bonds are identified by number in Attachment 3 to the Preliminary Approval Order (Dkt 83).

24. The settlement regarding the $50 savings bond is fair to all class members who were eligible for the savings bond because each is receiving the value for which they qualified. It is reasonable and adequate because they kept their electrical usage below the allowance and did not receive the bond they were promised.

25. The former tenants for whom Class Counsel has no valid address will have their equivalent amounts held in trust by Class Counsel for six months from when the checks are first sent to known addresses.

### Notice of Settlement

26. Class Counsel provided the best practicable notice to all class members and mailed individual notice to class members whose addresses could be determined. Class Counsel is responsible for distributing the settlement proceeds. Class Counsel has provided a declaration that the actual costs of doing this exceeded $2,000.00. Class Counsel will receive $2,000.00 out of the total settlement amount as administration costs.

27. Class Counsel mailed the approved Notice of Class Action Settlement (Preliminary Approval Order, Attachment 4, Dkt 83) to each of the Class Members who could be located. The Notice of Class Action Settlement described the following: the nature of this action; the definition of the class certified; the class claims and issues raised; the proposed amounts to be distributed for reimbursements; percentage of excess utility fees that class members will be reimbursed; that class members have the right to hire an attorney; that the court will exclude any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. This Notice also advised Class Members that they may contact Class Counsel if they would like further information.

28. Initially, addresses were found for all but eight Class Members. Notices were originally sent to 383 of the 436 class members, of which 45 notices were returned. Second and third mailings totaling 83 notices to additional tenants as well as some whose notices were initially returned yielded another 21 notices returned because of invalid addresses. Ultimately, of the 436 class members, 41 did not receive a notice because it was returned.

Thus, Class Counsel does not have valid addresses for 41 out of 436 total class members. Consequently, checks will be issued to approximately 94% of the Class Members. Based on this information, the court finds that the notice provided was reasonable, adequate, and the "best . . . practicable" under the circumstances and, thus, that it satisfied the requirements set forth in Rule 23. See Fed. R. Civ. P. 23(c)(2)(B).

29. On November 8, 2013, Defendants mailed the notice required pursuant to the Class Action Fairness Act of 2005 ("CAFA") to the Attorney General of the United States and to the Attorney General of the Commonwealth of Virginia. More than 90 days have passed since such notice was provided and no response has been received. See 28 U.S.C. § 1715(d).

### Objection, intervention, or opt-out

30. No Class Member or Class Counsel disagreed with the determination as to the class members' eligibility for reimbursement or the amount of the reimbursement.

31. No Class Member opted out.

32. One objection was received which set forth a unique set of circumstances and asserted that the particular payment amount was inadequate. This objection raised no issues as to whether the terms of the Settlement Agreement were fair, adequate, and reasonable for the class. This objection is overruled.

33. No Class Member has sought to intervene.

34. If an appeal is filed which does not set aside this settlement, any payment or form of other consideration provided to any intervenor or objector must first be presented to the Court for approval by motion. The motion that is made on behalf of any objector or intervenor must separately identify the consideration to be provided to the objector or

8

intervenor, any attorney's fees that are to be paid, and the benefit that the objector or intervenor conferred upon the class.

### Distribution of money

35. Each named Plaintiff and Class Member's proportionate total share of the Settlement Fund to be distributed from the Settlement Fund will be calculated as follows:

   (a) Each named Plaintiff and Class Member whose identifying number appears on Attachment 2 receives their percentage recovery for electricity surcharges between June 7, 2007 and May 31, 2013 as listed in Attachment 2.

   (b) Each named Plaintiff or Class Member whose identifying number appears on Attachment 3 receives a payment of $50.00 for each year identified in which that named Plaintiff or Class Member did not exceed their annual electrical allowance.

   (c) In consideration for their commitment to the pursuit of the claims in this action on behalf of themselves and the Class, the individual named Plaintiffs in this action will receive $6,000.00 from the Settlement Fund. This represents an incentive award of $1,000.00 to each named Plaintiff for participation as a class representative to cover the expenses incurred for attending meetings and hearings as well as personal time spent advancing the litigation and the personal risk they took in speaking out for their rights. This amount is within the normal range for incentive awards of class actions of this size.

    (d)    The settlement funds shall remain in escrow pending the resolution of any appeal from this order. If such an appeal is successful, the funds shall be returned to the Defendants should they so elect.

### Disposition of Unclaimed Funds (*Cy Pres*)

36. Any unclaimed funds in the escrow account as of six months after the checks have first been disbursed shall be distributed to the Albemarle Housing Improvement Project (AHIP), to be held in trust for the use by then-current tenants of CRHA facilities for monetary assistance toward the purchase of energy-efficient cooling equipment or energy-efficiency improvements.

### Attorneys' fees and costs

37. The settlement includes $50,000.00 in attorneys' fees, payable to Legal Aid Justice Center. This sum represents only a portion of the total hours spent by Plaintiffs' attorneys on this case multiplied by the lodestar rates of those attorneys representing reasonable rates for attorneys of comparable experience in the same market area. The court finds that the award of attorneys' fees is fair and reasonable.

38. Class Counsel also receives $2,000.00 out of the total settlement amount to cover the costs of settlement administration.

### Continuing Jurisdiction

39. The Court shall have continuing jurisdiction, during the term of this Agreement, to enforce this Settlement Agreement's terms, and to enforce the Final Judgment.

The Clerk is directed to strike the case from the court's active docket and to send certified copies of this order to all counsel of record.

ENTER: This 18th day of February, 2014.

*/s/ Jon Conrad*
Chief United States District Judge